IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| PHILIP WAYNE HARRISON, | ) | |
| | ) | |
| | ) | **Case No. 3:22-CV-455-DJH** |
| **Plaintiff,** | ) | |
| v. | ) | **CLASS ACTION** |
| | ) | |
| CARVANA, LLC | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## NOTICE OF REMOVAL OF CARVANA, LLC

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Carvana, LLC ("Carvana"), by and through its counsel, hereby gives notice of removal of this action from Jefferson Circuit Court to the United States District Court for the Western District of Kentucky, stating as follows:

### I.   FACTUAL BACKGROUND

1.     On or about August 5, 2022, Plaintiff Wayne Harrison ("Plaintiff") filed his Complaint in Jefferson Circuit Court, captioned *Harrison v. Carvana, LLC*, Civil Action No. 22-CI-004087.  A copy of the Complaint is attached hereto as Exhibit 1.  Plaintiff served Carvana with a copy of the Complaint on August 11, 2022.  *See* Summons (Ex. 2); Affidavit of Service of Summons (Ex. 3).

2.     Plaintiff alleges that he resides in West Chester, Ohio.  *See* Compl. (Ex. 1) ¶ 4.

3.     Plaintiff further alleges that Carvana is a limited liability company with its principal office in Tempe, Arizona.  *Id.* ¶ 5.  Carvana, in fact, is organized under the laws of Arizona and has its principal place of business in Arizona.

4.   Plaintiff alleges that he purchased a vehicle from Carvana and that Carvana did not transfer good title to the vehicle.  *See id.* ¶¶ 11, 26-27.

5.   Plaintiff seeks to represent himself as well as a class of "[a]ll persons in the Commonwealth of Kentucky similarly situated to Plaintiff comprised of the following persons: [a]ll persons/consumers within the two (2) year period prior to the date of filing of this action by Plaintiff . . . (A) [w]ho purchased a vehicle from Defendant Carvana, LLC in the Commonwealth of Kentucky; and (B) [w]ho have not received good title for the vehicle purchased from Defendant Carvana, LLC within the time allowed by law." *Id.* ¶¶ 48-49.

6.   The Complaint alleges that Carvana violated the Kentucky Consumer Protection Act (the "KCPA") when it allegedly failed to transfer title to Plaintiff and members of the proposed class title within 30 days of sale, allegedly fraudulently represented that it had title or could timely obtain title to the vehicles that Plaintiff and members of the proposed class allegedly purchased, and purportedly included a provision in the Retail Purchase Agreement governing the vehicle sales that forbids bringing consumer protection claims.  *Id.* ¶¶ 1, 12-18, 28, 30-31.

7.   Plaintiff also alleges that Carvana breached his Retail Purchase Agreement by failing to timely transfer title to his vehicles.  *Id.* ¶ 33.

## II.   GROUNDS FOR REMOVAL

8.   This case is removable, and this Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, and 1453, because (1) this case is a putative class action with more than 100 members in the proposed class, (2) there is minimal diversity, because Carvana and at least one member of the proposed class are citizens of different states, and (3) the Complaint places in controversy an amount that exceeds $5 million in the aggregate.

## A.    The Proposed Class Readily Exceeds 100 Members

9.      For purposes of removal, CAFA requires that the proposed class consist of at least 100 members.  *See* 28 U.S.C. § 1332(d)(5).  Plaintiff defines the proposed class as "[a]ll persons in the Commonwealth of Kentucky similarly situated to Plaintiff comprised of the following persons: [a]ll persons/consumers within the two (2) year period prior to the date of filing of this action by Plaintiff . . . (A) [w]ho purchased a vehicle from Defendant Carvana, LLC in the Commonwealth of Kentucky; and (B) [w]ho have not received good title for the vehicle purchased from Defendant Carvana, LLC within the time allowed by law." *Id.* ¶¶ 48-49.

10.     While Carvana disputes that it has failed to timely transfer title to any customer who purchased a vehicle in Kentucky, the proposed class, as alleged, includes more than 100 members, given that information currently available to Carvana shows that from August 5, 2020 through August 5, 2022, more than 100 persons in the Commonwealth of Kentucky purchased a motor vehicle from Carvana and allegedly did not timely receive title based on the allegations in the complaint.  *See, e.g., Aldrich v. Univ. of Phoenix, Inc.*, 661 F. App'x 384, 488 (6th Cir. 2016) (removal petition need only contain "short and plain statement" as to the basis of removal, because removal statute tracks language of Fed. R. Civ. P. 8(a)).  Accordingly, the requirement of 28 U.S.C. § 1332(d)(5) is satisfied.

## B.    Minimal Diversity Exists Among The Parties

11.     For purposes of establishing federal jurisdiction, CAFA requires only minimal diversity, and a defendant need only show that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  *See* 28 U.S.C. § 1332(d)(2)(A).

12.     According to the Complaint, Plaintiff is a resident of Ohio.  *See* Compl. (Ex. 1) ¶ 4.  Upon information and belief, Plaintiff is a citizen of the State of Ohio for purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1).  Plaintiff also seeks to represent a class of individuals

3

"in the Commonwealth of Kentucky" who purchased a vehicle from Carvana in the Commonwealth of Kentucky. *See* Compl. (Ex. 1) ¶¶ 48-49.

13.     Plaintiff alleges that Carvana is a limited liability company with its principal office in Tempe, Arizona. *See* Compl. (Ex. 1) ¶ 5. Carvana, in fact, is organized under the laws of the State of Arizona and has its principal place of business in the State of Arizona and is thus a citizen of the State of Arizona for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(d)(10).

14.     Sufficient diversity of citizenship exists between Plaintiff and Carvana or, alternatively, between at least one other member of the proposed class and Carvana, and removal is proper. *See* 28 U.S.C. § 1332(d)(2)(A).

### C.     The Amount In Controversy Exceeds $5 Million

15.     CAFA provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6). Where a complaint does not allege a dollar amount, a defendant's notice of removal under CAFA need include "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81 (2014).

16.     Plaintiff seeks his own actual damages, including a refund of all payments made to Carvana pursuant to the Retail Purchase Agreement and compensation for the alleged loss of use of his vehicle since his temporary tag allegedly expired. *See* Compl. (Ex. 1) ¶ 38. Plaintiff also seeks to represent a class of vehicle purchasers within a two year period prior to Plaintiff filing this action on August 5, 2022. *See id.* ¶ 49. Plaintiff seeks actual damages on behalf of the proposed class, and because Plaintiff alleges that his "claims are typical of the claims of the proposed Class" and that "[t]here is no known conflict between Plaintiff and any other members of the proposed Class with respect to this action, or with respect to the claims for relief herein set

4

forth," Plaintiff is necessarily seeking, *inter alia*, a refund of all payments made by members of the proposed class and compensation for the alleged loss of use of their vehicles. *See id.* ¶¶ 38, 57, 59, Prayer for Relief.

17.     Information currently available to Carvana shows that, from August 5, 2020 through August 5, 2022, more than $5 million was paid by members of the proposed class in connection with a vehicle purchased in the Commonwealth of Kentucky.

18.     In addition, Plaintiff seeks punitive damages under the KCPA. *Id.* at Prayer for Relief.  It is well-established that "[w]hen determining the jurisdictional amounts in controversy in diversity cases, punitive damages must be considered." *See, e.g., Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001).  Plaintiff's request for punitive damages increases the amount in controversy, which already exceeds $5 million.

19.     Carvana denies any and all liability and contends that Plaintiff's allegations are entirely without merit.  For purposes of this Notice of Removal, however, taking Plaintiff's factual and legal allegations as true, the amount-in-controversy exceeds $5,000,000, exclusive of interest and costs, and satisfies the amount-in-controversy requirement of CAFA. *See* 28 U.S.C. § 1332(d)(2).

### III.   COMPLIANCE WITH REMOVAL STATUTE

20.     The Notice of Removal was properly filed in the United States District Court for the Western District of Kentucky because the Jefferson Circuit Court of Jefferson County, Kentucky is located in this federal judicial district. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 93(a)(1).

21.     The Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

22.     Pursuant to 28 U.S.C. § 1446(a), attached hereto and marked as Exhibits 1 and 2, are true and correct copies of the Complaint and all process, pleadings, and orders served upon

Carvana.  *See* Compl. (Ex. 1); Summons (Ex. 2); Affidavit of Service of Summons (Ex. 3). Carvana has not filed an answer or other response to the Complaint in Jefferson Circuit Court and is not aware of any currently pending motions in that court.

23.     The Complaint was served on Carvana on August 11, 2022.  *See* Ex. 2.  This Notice of Removal is therefore timely under 28 U.S.C. § 1446(b)(1).

24.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff, and a copy, along with a Notice of Filing of the Notice of Removal, is also being filed with the Clerk of the Court of Jefferson Circuit Court of Jefferson County, Kentucky.

25.     Carvana reserves the right to amend or supplement this Notice of Removal. Carvana further reserves all rights and defenses, including those available under Federal Rule of Civil Procedure and including all rights to move to compel arbitration and/or to enforce a class waiver provision.

## IV.   CONCLUSION

Carvana respectfully requests that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in Jefferson Circuit Court, Jefferson County, Kentucky.  Carvana further requests such other relief as the Court deems appropriate.

Dated:  August 30, 2022

Respectfully submitted,

/s/ *Thomas P. O'Brien III*
Thomas P. O'Brien III, one of the Attorneys for Carvana, LLC

Thomas P. O'Brien III
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
Telephone: (502) 589-5400
Facsimile: (502) 581-1087
tobrien@fbtlaw.com

Eric Leon (New York Bar No. 2626562) (*Pro Hac Vice forthcoming*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Eric.leon@lw.com


Robert C. Collins III (Illinois Bar No. 6304674) (*Pro Hac Vice forthcoming*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
robert.collins@lw.com

### CERTIFICATE OF SERVICE

I, Thomas P. O'Brien III, hereby certify that I caused a copy of the foregoing to be served on the parties listed below, via the Court's ECF system, on August 30, 2022.

James R. McKenzie, KBA 81957
James R. McKenzie Attorney, PLLC
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel: (502) 371-2179
Fax: (502) 257-7309
jmckenzie@jmckenzielaw.com

James Hays Lawson, KBA 86930
Lawson at Law, PLLC
P.O. Box 1286
Shelbyville, KY 40066
Tel: (502) 473-6525
Fax: (502) 473-6561
james@kyconsumerlaw.com

/s/ *Thomas P. O'Brien III*
Thomas P. O'Brien III
One of the Attorneys for Defendant Carvana, LLC

Thomas P. O'Brien III
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
Telephone: (502) 589-5400
Facsimile: (502) 581-1087
tobrien@fbtlaw.com

0149754.0760939   4868-9773-4704v1

# EXHIBIT 1

Case No. **22CI04087**

JEFFERSON CIRCUIT COURT
BUSINESS COURT DOCKET
*Filed Electronically*

Philip Wayne Harrison

**PLAINTIFF**

JEFFERSON CIRCUIT COURT
DIVISION FOUR (4)

v.

Carvana, LLC

**DEFENDANT**

Serve:
Corporation Service Company
421 West Main Street
Frankfort, KY 40601

## COMPLEX CONSUMER CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.     This is a Complex Consumer Class Action within the meaning of Kentucky Supreme Court Order 2019-13, BCR 1.g by Plaintiff Philip Wayne Harrison as a consumer against Defendant Carvana, LLC ("Carvana") seeking damages for: **(i)** violations of the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110 *et seq.*, which declares "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" to be "unlawful"; **(ii)** breach of contract; **(iii)** violation of Kentucky's and/or Ohio's vehicle title laws.

2.     Philip Wayne Harrison brings this action individually on behalf of himself and as a proposed class action on behalf of all other Kentucky consumers similarly situated for damages caused by Carvana's unlawful conduct.

### JURISDICTION AND VENUE

3.     Jurisdiction of this court arises under KRS 367.220, KRS 23A.010 and Kentucky Supreme Court Order 2019-13, BCR 2.1. Venue is proper because the nucleus of relevant facts

and events giving rise to the claims of Mr. Harrison occurred in Jefferson County, Kentucky.[1]

## PARTIES

4.      Plaintiff Philip Wayne Harrison is a natural person who resides in West Chester, Ohio and a "person" within the meaning of the KCPA.

5.      Defendant Carvana, LLC ("Carvana") is a foreign limited liability company registered with the Kentucky Secretary of State whose principal office is located at 1930 W. Rio Salado Parkway, Tempe, AZ 85281. Carvana's principal place of business in the Commonwealth of Kentucky is located 1510 Lake Shore Court, Louisville, KY 40223-3803. Carvana is a "person" within the meaning of the KCPA.

## STATEMENT OF FACTS

6.      Defendant Carvana, LLC ("Carvana") is an online dealer of used vehicles.

7.      Carvana as a pattern and practice sells vehicles for which it knows it does not currently hold good and marketable title and for which it has no reasonable prospects or expectation of obtaining title.

8.      In May 2017, Illinois suspended Carvana's license to operate in the state because of its demonstrated failure to provide good and marketable title to the purchasers of vehicles it sells.

9.      In August of 2021, North Carolina imposed a 180-day suspension on Carvana from selling vehicles in the state.

---

[1] KRS 267.220(1) provides that "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, **may bring an action...in the Circuit Court...where the transaction in question occurred**, to recover actual damages". Bolding added. This case concerns a vehicle sale that occurred in Jefferson County, Kentucky.

-2-

10.     Hundreds if not thousands of complaints have been filed against Carvana with the Better Business Bureau concerning Carvana's failure to provide good title to vehicle purchasers.

11.     On May 5, 2022, Mr. Harrison entered into a retail purchase agreement with Carvana for the purchase of a 2012 Audi A5 Convertible (the "Carvana Purchase Agreement"). A true and accurate copy of the Carvana Purchase Agreement is attached as Exhibit "A."

12.     The purchase and sale of the 2012 Audi A5 Convertible constitutes "trade" or "commerce" within the meaning of the KCPA.

13.     Mr. Harrison used and intended to use the 2012 Audi A5 Convertible solely for personal, family, and/or household purposes.

14.     As part of the sale, Carvana issued Mr. Harrison a temporary tag for the 2012 Audi A5 Convertible, which was good for 30 days from the date of issue. KRS 186A.100.

15.     In Kentucky, a temporary tag "shall not be renewed." 601 KAR 9:140.

16.     The temporary tag expired.

17.     In Ohio, a temporary tag "is valid for a period of forty-five days from date of issuance and is not transferable or renewable" Ohio Rev. Code Ann. § 4503.182 (A).

18.     Carvana did not send Mr. Harrison a title to the 2012 Audi A5 Convertible within 30 days of sale so that he could title the 2012 Audi A5 Convertible in his name.

19.     Over three months later as of the date of fling of this action, Mr. Harrison still has not been provided title to the 2012 Audi A5 Convertible.

20.     Mr. Harrison made repeated attempts to contact Carvana to get the title to the 2012 Audi A5 Convertible.

21.     On July 25, 2022, Mr. Harrison filed an official dispute with the Ohio Attorney General.

-3-

22.     On three separate dates, Carvana sent him documents stating that he needed to get an Ohio Out of State Motor Vehicle Inspection—May 17, 2022, June 9, 2022, and July 12, 2022.

23.     Each time Mr. Harrison received one of these requests, Mr. Harrison took time out of his day to get the 2012 Audi A5 Convertible inspected and return the completed inspection certificate to Carvana.

24.     On July 25, 2022, Carvana sent Mr. Harrison a letter stating that it had received his "registration documents" but there was "an error with [his] paperwork."

25.     In connection with this letter, Carvana sent Mr. Harrison documents to complete and return, which included on Ohio BMV document titled "Motor Vehicle Physical Inspection for Ohio Resident and Military Personnel Temporarily Living Out of State." Mr. Harrison is neither military personnel nor living out of state.

26.     Carvana had and has a duty to timely transfer good title to Plaintiff within the legal allowable time for him to effectuate transfer was and is a necessary term of the Carvana Purchase Agreement.

27.     Carvana's failure promptly transfer title to Mr. Harrison constitutes a failure of consideration that voids the contract.

28.     The Carvana Purchase Agreement has an Arbitration Agreement with a provision that forbids the bringing of consumer protection claims.

29.     The provision prohibiting Mr. Harrison to bring this KCPA action against Carvana is against public policy and is procedurally and substantively unconscionable. *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 573 (Ky. 2012) (holding that "arbitration clauses…may…be struck down as unconscionable if their terms strip claimants of a statutory right, which cannot be vindicated by arbitration").

-4-

30.     Carvana violated the KCPA by selling Mr. Harrison the 2012 Audi A5 Convertible without the title in hand and no real prospect of getting the title.

31.     Carvana violated the KCPA by fraudulently representing that it had title or could get timely title to the 2012 Audi A5 Convertible in connection with the advertising and sale of the 2012 Audi A5 Convertible to him.

32.     Carvana violated the KCPA by including a provision in the Carvana Purchase Agreement that forbids bringing consumer protection to seek judicial review of claims against it.

33.     Carvana breached its Carvana Purchase Agreement by failing to transfer title to the 2012 Audi A5 Convertible.

## INDIVIDUAL CLAIMS FOR RELIEF

**COUNT I:     Breach of Contract**

34.     Plaintiff incorporates all paragraphs pleaded *supra* as if fully set out herein.

35.     The foregoing acts and omissions of Defendant Carvana, LLC ("Carvana") constitute breach of the purchase and sale agreement between Mr. Harrison and Carvana.

36.     As of the date of filing of this Complaint, Carvana has not sent Mr. Harrison good title to the 2012 Audi A5 Convertible, which is three months after the sale and delivery of the vehicle to Plaintiff.

37.     Carvana breached the purchase and sales agreement between it and Mr. Harrison by failing to transfer good title for the 2012 Audi A5 Convertible.

38.     Mr. Harrison is entitled to a full refund of his payment to Carvana and compensation for the loss of the use of the vehicle since the temporary tag expired.

-5-

**Count II.    Violations of the KCPA**

39.     The foregoing acts and omissions of Defendant Carvana, LLC ("Carvana") violate the KCPA.

40.     The sale and purchase of the 2012 Audi A5 Convertible constitute "trade" and "commerce" within the meaning of the KCPA.

41.     Mr. Harrison is a natural person within the meaning of the KCPA.

42.     Mr. Harrison used the 2012 Audi A5 Convertible exclusively for personal, family, and/or household purposes.

43.     Advertising for sale and selling Mr. Harrison the 2012 Audi A5 Convertible without good title and no realistic prospect of obtaining the title is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

44.     Including a provision in the Carvana Purchase Agreement that prohibits bringing consumer protection actions like this one is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

45.     Mr. Harrison suffered real and ascertainable losses from Carvana's violations of the KCPA, including but not limited to loss of use of the 2012 Audi A5 Convertible, denial of the benefit of the purchase and sale agreement for the 2012 Audi A5 Convertible, out-of-pocket expenses, loss of time trying to get Carvana to remedy its breach of contract and violation of law, and frustration, anxiety, and emotional upset.

46.     Mr. Harrison has a claim against Carvana under KRS 367.220 which gives him the right to recover his actual damages, punitive damages, costs, and reasonable attorney's fees.

**COUNT III. Class Allegations**

47.     Plaintiff incorporates all paragraphs pleaded *supra* as if fully set out under this

-6-

Count III.

48.     Plaintiff Philip Wayne Harrison brings his claims alleged in this action against Defendant Carvana Federal Credit Union ("Carvana") as a proposed class action on behalf of all persons in the Commonwealth of Kentucky similarly situated to Plaintiff comprised of the following persons:

**CLASS.**

**I.      Violations of the KCPA**

49.     All persons/consumers within the two (2) year period prior to the date of filing of this action by Plaintiff Philip Wayne Harrison:

**A.**     Who purchased a vehicle from Defendant Carvana, LLC in the Commonwealth of Kentucky;

**AND**

**B.**     Who have not received good title for the vehicle purchased from Defendant Carvana, LLC within the time allowed by law.

56.     The proposed Class as set out *supra* and represented by Philip Wayne Harrison in this action, of which he himself is a member, consists of those persons as defined and which members of the proposed Class are so numerous that joinder as parties of individual members is impracticable.

57.     Plaintiff's claims are typical of the claims of the proposed Class as set out *supra*.

58.     There are common questions of law and fact applicable to the members of the proposed Class in this action that relate to and affect the rights of each member of the proposed Class, and the relief sought is common to the entire proposed class because all members of the proposed Class have the same issues of law in common as alleged *supra* in this action.

-7-

59.    There is no known conflict between Plaintiff and any other members of the proposed Class with respect to this action, or with respect to the claims for relief herein set forth.

60.    Plaintiff is the representative party for the proposed Class, able to and will, fairly and adequately protect the interest of each of the proposed Class.

61.    Plaintiff's attorneys are experienced and capable in the field of consumer rights, including KCPA violations.

62.    Plaintiff's attorneys have successfully represented other claimants in similar litigation.

63.    The action is properly maintained as a class action in that the prosecution of separate actions by individual members of the proposed Class would create a risk that individual adjudications could be dispositive of the interests of other members not a party to such adjudication or could substantially impair or impede their ability to protect their interest.

64.    This action is properly maintained as a class action because the prosecution of separate actions by individual members of the proposed Class would create risk of varying individual adjudications, which would establish incompatible standards of conduct for Defendants.

65.    This action is properly maintained as a class action inasmuch as the questions of law and fact common to the proposed class members predominate over any questions affecting only individual members; a class action is superior to other methods available for the efficient adjudication of the controversy; the relief sought by all members of the proposed Class will be effective and appropriate for the entirety of each proposed class; and all members of the proposed Class have a right to damages or other relief that may be readily computed in each case or otherwise readily determined.

66.    The identity of each individual member of the proposed Class can be ascertained

-8-

from the books and records maintained by Defendants.

67.     Because many of the persons who comprise the proposed class in this case may not be aware of their rights, or may not be in a financial position to readily assert their rights, and because relegation of their claims to individual actions would result in an unreasonable multiplicity of suits and a corresponding burden on this and other courts, a class action is far superior to all other methods for a fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Philip Wayne Harrison requests the Court grant him the following relief:

1.     Award Plaintiff and all members of the proposed Class their actual damages;

2.     Award Plaintiff and all members of the proposed Class punitive damages against Carvana for Carvana's violations of the KCPA;

3.     Award Plaintiff individually a full refund of all payments made to Carvana pursuant to the sales agreement and compensatory damages for Plaintiff's loss of use of the vehicle for Carvana's breach of contract;

4.     Award Plaintiff and all members of the proposed Class attorney's fees, litigation expenses and costs;

5.     A trial by jury; and

6.     Any other relief to which Plaintiff may be entitled.

Submitted by:

/s/ James R. McKenzie
James R. McKenzie, KBA 81957
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207

-9-

Tel:    (502) 371-2179
Fax:   (502) 257-7309
jmckenzie@jmckenzielaw.com
*Co-counsel for Plaintiff*
*Philip Wayne Harrison*

James Hays Lawson, KBA 86930
*Lawson at Law, PLLC*
P.O. Box 1286
Shelbyville, KY 40066
Tel:    (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com
*Co-counsel for Plaintiff*
*Philip Wayne Harrison*

-10-

Filed          22-CI-004087     08/05/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
08/24/2022 07:38:45 PM
89824

# EXHIBIT

# A

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000009

David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
The Authoritative Copy of this record is held at NA3.docusign.net
08/24/2022 07:38:45 PM
89824

# Retail Purchase Agreement
## – Kentucky –

| BUYER | Philip Wayne Harrison |
|---|---|
| ADDRESS LINE 1 | |
| ADDRESS LINE 2 | |
| CITY, STATE, ZIP | WEST C ESTER O   45069 |

| P ONE(S) | RES. | BUS. |
|---|---|---|

| VEHICLE BEING PURCHASED | | | |
|---|---|---|---|
| Year 2012 | Make Aud | Mode A5 | Body Convert b e |
| L c. P ate # | L cense Tab # | Exp res | M eage 30638 | Co or B ack |

VIN #

**Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.**

**Buyer(s) ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our license dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealers p Address listed above. When we transfer title and ownership of the Ve icle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrange with s to have the Vehicle transported to another mutuall eed-upo lo ation for your pick-up.**

| TRADE IN EHICLE #1 | | | |
|---|---|---|---|
| Year N/A | Make N/A | Mod /A | Body |
| L c. P ate # N/A | L ce e Tab | Exp re | M eage N/A | Co or N/A |

VIN   N/A

| TRADE IN VEHICLE #2 | | | |
|---|---|---|---|
| Year N/A | Mak N/A | Mode N/A | Body |
| L c. P ate # N/A | L cense Tab # | Exp res | M eage N/A | Co or N/A |

VIN #   N/A

_Buyer's In t as_

| Date | 05/05/2022 | Phone | 1-800-333-4554 |
|---|---|---|---|

Dea ersh p  CARVANA, LLC

Address   1510 LAKE S ORE CT

C ty, State, Z p   LOUISVILLE, KY 40223-3803

Stock Number   2001761008

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**LA INFORMACION QUE VE ADHERIDA EN A VENTANILLA FORMA PARTE DE STE CO TRATO. LA INFORMACION CONTENIDA N LA PREVALECE POR SOBRE TODA TRA DISPOSICION INCLUIDA N EL C NTRA O E COMPRAVENTA**

| 1 | Se ng p e | $24,990.00 |
|---|---|---|
| 2 | Sa Tax | $1,624.35 |
| 3 | O R strato Fee | $36.00 |
| 4 | P ate Fe | $10.50 |
| 5 | t e Fee | $15.00 |
| 6 | eputy Fee | $5.00 |
| 7 | REFL/CO Fee | $0.75 |
| 8 | T te Inspect on Fee | $1.50 |
| 9 | But er Perm ss ve Fee | $20.00 |
| 10 | Temporary Perm t Fee | $20.00 |
| 11 | **Subtotal** (Selling Price + Delivery Fee + Fees + Taxes) | **$26,723.10** |
| 12 | Ba ance Due (Subtotal) | $26,723.10 |

| TOTAL BALANCE DUE (BALANCE DUE + TRADE-IN BALANCE) | **$26,723.10** |
|---|---|

**FINANCE CHARGE**
The do ar amount the cred t w cost you

$    7,116.54

f financed  interest charged on the principal amount  See Retail nstallment Contract for more information

C100KY 8/1/18

Page 1 of 3

David L. Nicholson, Jefferson Circuit Clerk
The Authoritative Copy of this record is held at NA3.docusign.net
NOT ORIGINAL DOCUMENT
08/24/2022 07:38:45 PM
89824

The se er hereby warrants that th s veh c e w  be f t for the ord nary purposes for wh ch the veh c e s used for 15 days or 500 m es after de very, wh chever s ear er, except w th regard to part cu ar defects d sc osed on the f rst page of th s agreement. You (the purchaser) w  have to pay up to $25.00 for each of the f rst two repa rs f the warranty s v o ated.

> **NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO  N EST MATED PAY OFF AND THE FEES REFERRED TO  N THE ABOVE L NE TEMS ARE EST MATES  AT THE T ME THE BALANCES AND FEES ARE VER F ED AND CONTRACT DETERM NED  APPROPR ATE ADJUSTMENTS  F NECESSARY  W LL BE MADE  ANY D FFERENCE  N THE PAYOFF AMOUNT  S THE RESPONS B L TY OF THE BUYER(S)

**Carvana Vehicle Return Program**

We w  g ve you the ab ty to return the Veh c e to Carvana and term nate th s reta  purchase agreement and any reta  nsta ment contract executed n connect on herew th so ong as:

1. You have not returned, exchanged, or swapped more than two (2) pr or Veh c es to Carvana n connect on w th any Reta  Purchase Agreements or Reta  Insta ment Contracts assoc ated w th th s transact on.
. If you have returned, exchanged, or swapped two (2) pr or Veh c es n connect on w th th s transact on, you w  be g ven a one- me opportun ty to dec ne or accept the th rd and f na  Veh c e e ther dur ng the de very or p ck-up appo ntment un ess otherw se app oved by Carvana.

2. You a ert Carvana by phone, text, ema , or chat pr or to 8pm EST on the 7th ca endar day after you take de ve y f the Veh c e.  e d y your Veh c e s de vered, regard ess of de very t me, w  count as the f rst day of your seven (7) day test own

3. You return the Veh c e n one of two ways:
. W th n a Carvana serv ce area: you make the Veh c e ava ab e for p ck up by a Carvan  represe tat v  t a predeterm  t me and ocat on the fo ow ng bus ness day. Cost of p ckup w  be pa d by Carvana. Serv ce area s des gn d by z p code and subject to change w thout pr or not ce.
. Outs de of a Carvana serv ce area: Carvana w  arrange for transport of the Veh c . The c  w  b  pa d y you. Serv ce area s des gnated by z p code and subject to change w thout pr or not ce.

4. The Veh c e s free of a  ens and encumbrances other than th  en created n y r favo  by any app cab e reta  nsta ment contract executed between you and Carvana;

5. The Veh c e s n the same cond t on you rece ved t ex  for easonab e wear and tear (ev dence of smok ng n the Veh c e dur ng the 7 Day Test Own s not cons dered reasonab e wear  ar) and any  echan ca  prob em that becomes ev dent after de very that was not caused by you;

6. You have not dr ven t more han 400  es;

7. The Veh c e s w thou  damage or  v ng en n an acc dent that occurred after you took de very of the Veh c e;

8. If the Ve  s dr ve more than 400  es,  Carvana's e ect on you w  pay $1.00 per m e for each m e the Veh c e was dr ven over 400 m es. If you retu n you  veh c e and ha traded n a veh c e to us, we w  return your trade to you on y after you have pa d a  fees requ red for the return  the Veh c e. Requ ed fees m y not be pa d by persona  check. Requ red fees w  be deducted from your down payment refund. If you pa d  ur down payment va  ansact on, we w  pay you and/ or return your trade n by the ear er of (a) when you prov de ev dence that the AC  nsact on was  eared, or (b) 15 bus ness days after your purchase of the Veh c e. So ong as you meet a  cond t ons for return of the Veh c e ut ned above  Carvana w  not report th s account to the cred t bureaus.

9. Any Trade In veh c es w th current  ens wh ch are nvo ved n th s transact on w  be pa d off once sa e s comp ete and after the test own per od ends. You shou d cont nue to make payments on  ens f payment s due w th n your test own per od. The  en ho der of the Trade-In veh c e w  re mburse you for any over-payment after the transact on s comp ete.

**Trade in Representation and Warranty:** You represent and warrant that the trade-n descr bed n the Buyer's order/Purchase Agreement, f any, has not been m srepresented and a r po ut on equ pment s on the trade- n and s work ng, you w  prov de to us a Cert f cate of T t e (or documents that a ow us to obta n t), free of any en(s) or encumbrance(s), ( .e. t t ng ssues, ch d support or amounts due to government t t ng or reg strat on agency,) and you have the r ght to se  the trade- n.

**General:** At t me of de very, or at any t me dur ng your 7 Day Test Own per od, you may reject your veh c e and term nate your veh c e f nanc ng and purchase for any reason.

In certa n states, dea ers may not p ace any ns gn a that advert ses the dea er's name on a veh c e un ess the Buyer consents thereto n the purchase contract for such veh c e. Un ess Buyer not f es dea er otherw se n wr t ng, Buyer hereby express y consents to the p acement of Carvana's name on the veh c e s cense p ate cover. Buyer express y wa ves any compensat on for the p acement of dea er s name on the veh c e.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000003 of 000009

Filed        22-CI-004087        08/05/2022        David L. Nicholson, Jefferson Circuit Clerk

David L. Nicholson, Jefferson Circuit Clerk

The Authoritative Copy of this record is held at NA3.docusign.net

**Default:** You w ll be n defau t f any of the fo ow ng occurs (except as may be proh b ted by  aw): 1. You gave us fa se or m s ead ng nformat on on carvana.com or on the te ephone, v a ema  or text message, n person, or any other commun cat on med um n connect on w th the purchase of the Veh c e re at ng to th s Agreement; 2. If we cannot ver fy any nformat on that you have prov ded us; 3. If we d scover a mater a  adverse change n any nformat on you prov ded us dur ng our rev ew process; 4. If you do not cooperate n the ver f cat on and rev ew process descr bed be ow; 5. You fa  to keep any other agreement or prom se you made n th s Agreement and/or any reta nsta ment contract executed n connect on herew th.

**Assignment:** You may not ass gn your r ghts under th s Agreement and/or any reta nsta ment contract executed n connect on herew th w thout our perm ss on.

**After-sale Review and Verification Process:** The Veh c e so d to you s subject to an after-sa e rev ew and ver f cat on of the nformat on you have prov ded to us. You agree to cooperate w th the after-sa e rev ew and ver f cat on process.

**Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.**

**References:** To the extent you are f nanc ng your purchase w th us, we may contact your emp oyer or your references to ver fy the nformat on you prov ded to us n connect on w th th s Agreement.

**Odometer (mileage):** Each of your and our represent at ons regard ng odometer read ngs are subject to nformat on prov ded by others, nc ud ng government agenc es. We each understand that th s nformat on s not a ways accurate. As perm tted by app cab e  aw, ne ther us s respons b e for any naccurac es n th s nformat on to the extent t s not the party s fau t.

**Disclosure on Airbags:** We d sc a m any know edge of, and make no represent at on or warranty as to the cond t on or opera b ty of t e a rbag(s) on the veh c e un ess otherw se d sc osed to you on the Carfax Veh c e  story Report. You acknow edge that we  a  not made any represent at ons, ora  or n wr t ng, as to the cond t on or operab ty of the a rbag(s), and you accept the veh c e w thout represent at on o  warranty from us. You further acknow edge that you had the opportun ty to have the a rbag(s) checked by someone of y ur c o ce pr or to the exp at on of your 7 Day Test Own Per od.

**Liability Insurance:** You understand that state  aw requ res you to purchase and ma nta n  ab ty  nsurance. We do not prov d   ab ty  nsurance for you and t s not nc uded n your Agreement. Your cho ce of nsurance prov de  w  no  ffect o  dec s on to s  you the veh c e.

**Record Retention:** You agree that we may ma nta n documents and records re ated to  e veh c e and e Agreement e ectron ca y, nc ud ng, but not  m ted to, documents and record mages, and that we may d spose of or g na  documents. You ag e that a  py of any such e ectron c records may be used and sha  be deemed to be the same as an or g na  n  ny arb trat o  jud c a  or non-j d a  or regu atory proceed ng re ated to the veh c e.

**Arbitration Agreement:** The arb trat on agreement entered nto   tween you and  a er  ncorporated by reference nto and s part of th s Agreement.

**NOTICE:** Carvana, LLC a ows you to f nance app cab e  es/u e taxes assessed on anc ary products (veh c e serv ce contract, GPS, GAP Coverage). Whether you f nance your veh c   ase or pay  h, f your veh c e s reg stered n the state where you purchased your veh c e, Carvana w  rem t the app cab e sa es/ tax on an  ary produc  to that state on your beha f. Un ess requ red by state  aw, f your veh c e s reg stered n a state that s not the state  here you p rchased the veh c e, Carvana w  not co ect or rem t to the state of veh c e reg strat on any app cab e sa es/use tax on anc ary prod cts on   ur beha f un ess you  ve n Kansas, Lou s ana, or Pennsy van a.

**Buyer(  acknowledg s rec ipt of a copy of this Agreement. No oral agreements or understandings apply. This agreeme   is n  binding until accepted by an authorized representative of Carvana.**

Buye _____

*Philip Harrison*

Ph  p Wayne    a  son

Accepted By _____

Carvana

COPY VIEW

C100KY 8/1/18

Page 3 of 3

David L. Nicholson, Jefferson Circuit Clerk
The Authoritative Copy of this record is held at NA3.docusign.net
NOT ORIGINAL DOCUMENT
08/24/2022 07:36:44 PM
89824

OH-102 11/1/2021

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC<br>1510 LAKE SHORE CT<br>LOUISVILLE, KY 40223-3803 | Philip Wayne Harrison<br><br>Wes Ches er OH 4506 | No. | 2001761008 |
| | | Date | 05/05/2022 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payme of<br>0.00 |
|---|---|---|---|---|
| 8.112 % | $ 7,116.54 | $ 26,723.10 | $ 33,839.64 | $ 33,839.64 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 470.00 | Mon hly Be nning 06 /22 |
| 1 | $ 469.64 | 05/ /28 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due ate, you will be ch ed a lat charge of the esser of 5% of the unpaid amount of the payment due or $20.00.

**Prepayment.** If you pay off this Contract early, you will not have to p y a penalty.

**Contract Provisions.** You can see the terms of this Contract f any additio inf mation about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | M | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2012 | Aud | A5 | Convert b e | | 30638 |

Odometer Mileage is Accura  ☒ Yes ☐ No

☐ New
☒ U d
☐ D o

Other:

N/A

## Descri tion of T ade-In

N/A

N/A

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____ N/A _____ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ 26,723.10 plus finance charges accruing on the unpaid balance at the rate of 8.112 % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth In Lending Disclosure*. You also agree to pay any

additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

**Returned Check Charge.** If you make any payment by check (or other negotiable instrument) required by this Contract that is returned or dishonored, you agree to pay a fee of $ 15.00 .

☐ **Convenience Fee (optional).** By signing this Contract, you acknowledge and agree to pay us a registration Convenience Fee of $ N/A for providing OPTIONAL vehicle registration services that you requested. It is considered earned on the date of this Contract and will be ☐ paid in cash on or before signing this Contract. ☐ financed as part of this Contract.

☐ **Convenience Fee (required).** By signing this Contract, you acknowledge and agree to pay us a registration Convenience Fee of $ N/A for providing vehicle registration services REQUIRED by the secured party. It is considered earned on the date of this Contract and will be ☐ paid in cash on or before signing this Contract. ☐ financed as part of this Contract.

Retail Installment Contract and Security Agreement-OH
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
L 00 4087    08/05/2022
RSSIMVLFLZOH 11/1/2021
Bankers Systems®
Page 1 of 5

David L. Nicholson, Jefferson Circuit Clerk
Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)
EXH : 000005 of 000009

David L. Nicholson, Jefferson Circuit Clerk
The Authoritative Copy of this record is held at NA3.docusign.net
NOT ORIGINAL DOCUMENT
2022 07:38:45 PM
39324

## Itemization of Amount Financed

a. Price of Vehicle, etc. (incl. sales tax of
   $ __1,624.35__ )                              $ __26,614.35__
b. __N/A__                                        $ __N/A__
c. Service Contract, paid to:
   __N/A__                                        $ __N/A__
d. Amount to finance line h (if h is negative)    $ __0.00__
e. **Cash Price** (a+b+c+d)                       $ __26,614.35__
f. Trade in allowance                             $ __N/A__
g. Less: Amount owing, paid to (includes d):
   __N/A__                                        $ __N/A__
h. Net trade in (f g; if negative, enter $0 here and enter
   the amount on line d)                          $ __N/A__
i. Cash payment                                   $ __0.00__
j. Manufacturer's rebate                          $ __0.00__
k. Deferred down payment                          $ __0.00__
l. Other down payment (describe)
   __N/A__                                        $ __N/A__
m. **Down Payment** (h+i+j+k+l)                   $ __0.00__
n. **Unpaid balance of Cash Price** (e m)         $ __26,614.35__
o. Paid to public officials:
   i Government certificate of title fees,
     including lien notation fee of $ __N/A__      $ __N/A__
   ii   Title and Registration Fees               $ __108.75__
   iii __N/A__                                     $ __N/A__
p. Insurance premiums paid to insurance company(ies) $ __N/A__
q. Gap Waiver paid to Seller                      $ __N/A__
r. To: __N/A__                                    $ __N/A__
s. To: __N/A__                                    $ __N/A__
t. To: __N/A__                                    $ __N/A__
u. To: __N/A__                                    $ __N/A__
v. To: __N/A__                                    $ __N/A__
w. To: __N/A__                                    $ __N/A__
x. To: __N/A__                                    $ __N/A__
y. To: __N/A__                                    $ __N/A__
z. To: __N/A__                                    $ __N/A__
aa. To: __N/A__                                   $ __N/A__
bb. **Total Other Charges/Amts Paid** (o thru a)  $ __108.75__
cc. **Prepaid Finance Charge**                    $ __0.00__
dd. **Amount Financed** ( bb cc)                  $ __26,723.10__

We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☒ None
Premium $ __N/A__                        Term __N/A__
Insured __N/A__

**Credit Disability**

☐ Single   ☐ Joint   ☒ None
Premium $ __N/A__                        Term __N/A__
Insured __N/A__

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

__N/A__                                  __N/A__
**By:** _____     **DO**

__N/A__                                  __N/A__
**By:** _____     **DOB**

__N/A__                                  __N/A__
**By:** _____     **DOB**

**Property Insurance.** You must insure the Property. You may furnish the required insurance through any insurance company or agency you choose subject to our right of approval of a company or agency based on reasonable standards uniformly applied. The collision coverage deductible may not exceed $ __1,000__ . If you get insurance from or through us you will pay $ __N/A__ for __N/A__ of coverage.

This premium is calculated as follows:
☐ $ __N/A__ Deductible, Collision Cov.          __N/A__
☐ $ __N/A__ Deductible, Comprehensive $ __N/A__
☐ Fire-Theft and Combined Additional Cov.       $ __N/A__
☐ __N/A__                                        $ __N/A__

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may furnish the required insurance through any insurance company or agency you choose subject to our right of approval of a company or agency based on reasonable standards uniformly applied. If you buy the coverage from or through us, you will pay $ __N/A__ for __N/A__ of coverage.

[This area intentionally left blank.]

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000006 of 000009

David L. Nicholson, Jefferson Circuit Clerk
The Authoritative Copy of this record is held at NA3.docusign.net
NOT ORIGINAL DOCUMENT

**Choice of Insurer or Agency.** Your choice of insurer or agency for Property Insurance or Single Interest Insurance (if required) does not and will not affect our credit decision or credit terms in any way, except that we may impose reasonable requirements as provided by law such as the minimum limits of coverage, and the right to approve an insurer or agency as earlier provided.

By signing below, you acknowledge receipt of a copy of the above disclosure, and you agree to the financing of the following premiums (if any) as part of this Contract.

☐ Property Insurance Premium   ☐ Single Interest Insurance Premium

| N/A | N/A |
|---|---|
| **By:** | **Date** |
| N/A | N/A |
| **By:** | **Date** |
| N/A | N/A |
| **By:** | **Date** |

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term    N/A
Price   $   N/A
Coverage    N/A

☐ **Gap Waiver**
Term    N
Price   $   N/A
Coverage    N/A

☐ **Cosmetic Protection**
Term    N/A
Price   N/A
Coverage    N/A

DocuSigned by:
*Philip Harrison*    05/05/2022
5EFFB8AE19D5489...
**By:** Philip Wayne Harrison    **Date**

| N/A | N/A |
|---|---|
| **By:** | **Date** |
| N/A | N/A |
| **By:** | **Date** |

## Additional Terms of the Sales Agreement

**Definitions.** "*Contract*" refers to this Retail Installment Contract and Security Agreement. The pronouns "*you*" and "*your*" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "*we*", "*us*" and "*our*" refer to the Seller and any entity to which it may transfer this Contract. "*Vehicle*" means each motor vehicle described in the *Description of Property* section. "*Property*" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "*Total Sale Price*" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as part of this Contract may involve money retained by us or paid back to us as commissions or other compensation.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payment. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided below.

**Irregular Payment Schedule.** *Irregular Payment Schedule* is set with payments not scheduled to be in substantially equal consecutive payments. If you have an irregular payment schedule and if you are buying the Property primarily for personal, family, or household use, you may refinance this Contract without penalty. The terms of the refinancing will be no less favorable to you than the terms of this Contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**Governing Law and Interpretation.** This Contract is governed by the law of Ohio and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
- ◆ You fail to perform any obligation that you have undertaken in this Contract.
- ◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default you agree to pay our actual and reasonable expenses in retaking possession of the Property, subject to your right (as permitted by law) to cure a default after repossession, and get notice of such rights.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

Retail Installment Contract and Security Agreement-OH
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
RSSIMVLFLZOH 11/1/2021
Bankers Systems®
Page 3 of 5

DS
PH

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000007 of 000009

David L. Nicholson, Jefferson Circuit Clerk
The Authoritative copy of this record is held at NA3.docusign.net
NOT ORIGINAL DOCUMENT

**Remedies.** If you are in default on this Contract, and after we wait any required period, we have all of the remedies provided by law and this Contract, subject to any right to cure that you may exercise. Those remedies include:

◆ After waiting any required period, we may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ After any required waiting period we may sell the Property as the law permits and apply what we receive as provided by law for our actual and reasonable expenses and then toward your obligations.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.

◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

◆ We may release any security and you will still be obligated to pay this Contract.

◆ If we give up any of our rights, it will not affect your duty to pay this Contract.

◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the vehicle, all other Property, and accessions. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract, to the extent permitted by law.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

◆ You agree not to remove the Property from the U.S. without our prior written consent.

◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

◆ You will pay all taxes and assessments on the Property as they become due.

◆ You will notify us with reasonable promptness of any loss or damage to the Property.

◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract.

**Gap Waiver.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver agreements.

If you choose to purchase a Gap Waiver product as indicated in the *Additional Protections* section, then the separate Gap Waiver agreement will become a part of this Contract.

## Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following note does not apply. NOTICE ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| By: | Date |
| Signature of Third Party Owner (NOT the Buyer) | |

COPY PREVIEW

Retail Installment Contract and Security Agreement-OH
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
L 004087    08/05/2022
RSSIMVLFLZOH 11/1/2021
Bankers Systems®
Page 4 of 5

David L. Nicholson, Jefferson Circuit Clerk
Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)
EXH : 000008 of 000009
DS
PH

David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
The Authoritative Copy of this record is held at NA3.docusign.net
08/24/2022 07:38:45 PM
89824

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

DocuSigned by:
*Philip Harrison*                                      05/05/2022
By: Philip Wayne Harrison  5EEFB8AE19D5489...           Date

N/A                                                    N/A
By:                                                    Date

*[signature]*                                          05/05/2022
By: CARVANA, LLC

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

DocuSigned by:
*Philip Harrison*                                      05/05/2022
By: Philip Wayne Harrison  5EEFB8AE19D5489...           Date

N/A                                                    N/A
By:                                                    Date

N/A                                                    N/A
By:                                                    Date

**Seller**

*[signature]*                                          05/05/2022
By: CARVANA, LLC                                       Date

**Assignment.** This Contract and Security Agreement is assigned to
N/A

the Assignee, phone _____ N/A _____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐   This Assignment is made with recourse.

**Seller**

N/A                                                    N/A
By:                                                    Date

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000009 of 000009



DS
PH

Retail Installment Contract and Security Agreement-OH
©2021 The Reynolds and Reynolds Company        L00-4087     08/05/2022     David L. Nicholson, Jefferson Circuit Clerk
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
RSSIMVLFLZOH 11/1/2021
Bankers Systems®
Page 5 of 5

# EXHIBIT 2

| AOC-E-105<br>Rev. 9-14 | Sum Code: CI |  | NOT ORIGINAL DOCUMENT<br>08/24/2022 | Case #: **22-CI-004087** |
|---|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice   *Courts.ky.gov* | | | 89884 | Court: **CIRCUIT** |
| CR 4.02; Cr Official Form 1 | | **CIVIL SUMMONS** | | County: **JEFFERSON Circuit** |

*Plantiff,* **HARRISOIN, PHILIP WAYNE VS. CARVANA, LLC**, *Defendant*

TO:   **CARVANA, LLC**
  **C/O CORPORATION SERVICE COMPANY**
  **421 WEST MAIN STREET**
  **FRANKFORT, KY 40601**

The Commonwealth of Kentucky to Defendant:

  You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Davis L. Nicholas*

Jefferson Circuit Clerk
Date: **8/5/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☐ Not Served because: _____

  Date: _____, 20 _____

  _____
  Served By

  _____
  Title

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

CI : 000001 of 000001

Summons ID: @00001008948
CIRCUIT: 22-CI-004087 Certified Mail
HARRISOIN, PHILIP WAYNE VS. CARVANA, LLC



eFiled

# EXHIBIT 3

Filed    EFT Certified    08/16/2022    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
08/24/2022 07:38:52 PM
89824

**UNITED STATES**
**POSTAL SERVICE**™

Date Produced: 08/15/2022

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8385 5390 25. Our records indicate that this item was delivered on 08/11/2022 at 07:46 a.m. in FRANKFORT, KY 40601. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

AOS - 000001 of 000001

Customer Reference Number:     C3603866.21314487

Filed        22-CI-004087    08/16/2022    David L. Nicholson, Jefferson Circuit Clerk