**UNITED STATES DISTRICT COURT**
Western District of Kentucky
Louisville Division

| | |
|---|---|
| Philip Wayne Harrison )<br>  *Plaintiff* )<br> )<br>v. )<br> )<br>Carvana, LLC )<br>  *Defendant* )<br> ) | Case No.   3:22-cv-00455-DJH |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

### INTRODUCTION

On August 5, 2022, Representative Plaintiff, Philip Wayne Harrison, individually and on behalf of all others similarly situated, filed a Class Action Complaint (the "Complaint") in the Jefferson Circuit Business Court, Case No. 22-CI-004087. The Complaint alleges that Defendant Carvana, LLC ("Carvana") violated the Kentucky Consumer Protection Act ("KCPA"), KRS 367.010 *et. seq.* and breached its contract with Mr. Harrison. In particular, the Complaint alleges that, after selling Mr. Harrison a used vehicle, Carvana failed to transfer good title to the vehicle within the time permitted by law.

Carvana removed this action to this Honorable Court on August 31, 2022. This Court lacks subject matter jurisdiction over this action because Carvana cannot satisfy its heavy burden of establishing either that the amount in controversy exceeds Five Million Dollars ($5,000,000) under 28 U.S.C. §1332(d)(2) with respect to the putative class action, or in the alternative, exceeds $75,000 with respect to the Representative Plaintiff as an individual litigant *and* with respect to each and every Class Member under 28 U.S.C. §1332(a).

Carvana offers no proof in support of its heavy burden. Instead, in lieu of "evidence,"

1

Carvana relies solely on unsubstantiated and unverified conclusory allegations in its Removal Petition. Carvana has failed to establish that the jurisdictional amount-in-controversy requirements are satisfied. Accordingly, it is respectfully submitted that this case must be remanded to state court for lack of subject matter jurisdiction.

## SUMMARY OF ARGUMENT

Carvana offers no evidence which would permit this Court to conclude that more than $5,000,000 is in controversy for the class claims as required by 28 U.S.C. §1332(d)(2). Rather, Carvana simply declares that based on "available information" that there are more than 100 members of the proposed class and that these 100+ persons have paid more than $5 million to Carvana during the applicable time period.

In sum, Carvana has not sustained its heavy burden to establish satisfaction of diversity jurisdiction's amount-in-controversy requirements.

## ARGUMENT

**I. CARVANA CANNOT SATISFY ITS JURISDICTIONAL BURDEN WITH ITS UNSUPPORTED CONCLUSORY ALLEGATIONS**

> A party seeking a federal venue by virtue of removal must establish the jurisdictional requirements of that venue. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351(1992). CAFA does not alter the fact that "the removing defendant has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met." *Brown v. Jackson Hewitt, Inc.,* No. 1:06–cv–2632, 2007 WL 642011, (N.D.Ohio 2007) (citing, *e.g., Morgan v. Gay,* 471 F.3d 469, 473 (3d Cir.2006) (CAFA does not shift the burden to the plaintiffs in removal cases); *Hayes v. Equitable Energy Resources Co.,* 266 F.3d 560, 572 (6th Cir.2001) (burden on defendant seeking remand to show by preponderance of evidence that amount in controversy in met); *Gafford v. Gen'l Elec. Co.,* 997 F.2d 150, 158 (6th Cir.1993) (same)). Further, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Jacada, Ltd. v. Int'l Mktg. Strategies, Inc.,* 401 F.3d 701, 704 (6th Cir.2005)

>> (quoting *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999)).

*Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404–05 (6th Cir. 2007).

"It is axiomatic that the statutes conferring removal jurisdiction are to be construed strictly." *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 (6th Cir. 1991) citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

Carvana's notice of removal fails to meet its burden of establishing this Court's jurisdiction.

**II.    Carvana Offers No Proof That $5,000,000 is at Issue in this Putative Class Action as Required by The Class Action Fairness Act of 2005 ("CAFA").**

The Class Action Fairness Act of 2005 ("CAFA") authorizes removal if the Plaintiff's class claims exceed $5 million subject to other conditions not in issue. *See* 28 U.S.C. §1332(d)(2).

Carvana's only proof of the monetary amount of the class claims consists of reciting the Representative Plaintiff's unquantified prayer for relief in a few conclusory sentences:

> 10.    While Carvana disputes that it has failed to timely transfer title to any customer who purchased a vehicle in Kentucky, the proposed class, as alleged, includes more than 100 members, given that information currently available to Carvana shows that from August 5, 2020 through August 5, 2022, more than 100 persons in the Commonwealth of Kentucky purchased a motor vehicle from Carvana and allegedly did not timely receive title based on the allegations in the complaint.
>
> \*    \*    \*    \*    \*
>
> 17.    Information currently available to Carvana shows that, from August 5, 2020 through August 5, 2022, more than $5 million was paid by members of the proposed class in connection with a vehicle purchased in the Commonwealth of Kentucky.
>
> 18. In addition, Plaintiff seeks punitive damages under the KCPA. *Id*. at Prayer for Relief. It is well-established that "[w]hen determining the jurisdictional amounts in controversy in diversity

3

>cases, punitive damages must be considered." *See, e.g., Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). Plaintiff's request for punitive damages increases the amount in controversy, which already exceeds $5 million.
>
>19. Carvana denies any and all liability and contends that Plaintiff's allegations are entirely without merit. For purposes of this Notice of Removal, however, taking Plaintiff's factual and legal allegations as true, the amount-in-controversy exceeds $5,000,000, exclusive of interest and costs, and satisfies the amount-in-controversy requirement of CAFA. *See* 28 U.S.C. § 1332(d)(2).

Carvana's Notice of Removal at 3, DE 1. This is woefully insufficient.

Carvana notably does not explain the source of the "information currently available."

As to Carvana's representation as to the number of potential class members, Carvana should have no difficulty in determining **a.)** the exact number of vehicles sold it sold in the Commonwealth and **b.)** of those vehicles, how many it failed to transfer title to the purchaser within the time allowed by law.

As to Carvana's representation as to damages, Carvana misconstrues the allegations in Plaintiff's complaint. As to his individual claims, Plaintiff seeks to void the retail installment and sales agreement ("RISC") that he entered into with Carvana and return of payments made on the purchase to date. According to the plain terms of the RISC, which is dated May 5, 2022, he has paid $1,880 under the RISC to date. Further, as the Court is aware, the vast majority of persons who purchase vehicles finance the purchase, like Plaintiff. This means that, assuming 100 potential plaintiffs as alleged by Carvana, there is no more than two years of car payments at issue in terms of potential damages.

Carvana only sells used cars. Currently, the average monthly used car payment is $515.[1]

---

[1] "Average auto loan payments: What to expect in 2022." https://www.bankrate.com/loans/auto-loans/average-monthly-car-payment/ (last accessed September 22, 2022).

Assuming that all 100 potential class members other than Plaintiff have paid 24 monthly payments, this only amounts to $1,236,000 (100 x 24 x $515), well short of the $5 million plus that Carvana claims. And $1.2 million is based on the unrealistic and most generous assumption that each class member has made 24 monthly payments. Law of averages should place the number at about have that number or 12 monthly payments, which takes the potential damages to around $750,000.

More importantly, Carvana's argument concerning total damages assumes that damages to each plaintiff will consist of the total amount paid by each class member to Carvana. This assumption is wrong.

Plaintiff's individual claims against Carvana include a demand to void his contract with Carvana and return of all payments he has made to Carvana to date. This claim is based on the fact that, at the time of filing the complaint, Carvana had not conveyed timely title to him. But this will not be true for most of the proposed class members.

The complaint's prayer for relief asks for recovery of each class member's "actual damages."

The actual damages for the most if not all class members will consist of loss of use of their purchased vehicle for the period of time from 30 days after sale to the date that Carvana finally convey title to the consumer. Any class member to whom Carvana has provided title, though untimely, and has continued to use the vehicle at issue will have waived any right to void the underlying sales contract and would be limited to loss-of-use damages. Loss-of-use damages most likely would be in the range of $2,000 to $3,000 range. This means total damages would be somewhere in the range of $300,000 on the low end and $600,000 on the high end.

Therefore, Carvana has failed to satisfy its heavy removal burdens of demonstrating the class claims exceed $5 million under §1332(d)(2).

### III. Potential Awards of Punitive Damages Cannot Be Included in Determining the Requisite Amount in Controversy

CAFA amended 28 U.S.C. §1332 to allow for claim aggregation in determining whether the $5,000,000 amount in controversy is satisfied. CAFA, however, does not reference punitive damages as a basis for satisfying the amount-in-controversy requirement. To the contrary, Congress amended §1332 with reference to the required amount-in-controversy in class actions but carefully preserved exactly the same damage language which historically *excluded* attorney fees and punitive damages: "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs . . . and is a class action." 28 U.S.C. § 1332(d)(2).[2]

In addition, it is apparent from the statutory language itself in 28 U.S.C. §1332(d)(4)(A)(II)(aa) that Congress elected to continue to distinguish between *claims*—which are essentially causes of action predicated on common law or statute—and *relief*—which conversely may include actual, consequential or punitive damages, equitable relief and/or attorneys fees:

> (4) A district court shall decline to exercise jurisdiction under paragraph (2)—
>
> > (A)(i) over a class action in which
> >
> > > (II) at least 1 defendant is a defendant—

---

[2] Thus Congress in enacting 28 U.S.C. §1332 (d)(3)(F) provided that a district court may decline to exercise jurisdiction under certain circumstances based on various factors including "whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions *asserting the same or similar claims* on behalf of the same or other persons have been filed" (emphasis added). The provision would be superfluous if "the same or similar claims" included requests for potential punitive damages or attorney fees as *all* requests for punitive damages and attorneys fees are by their nature "similar." This amendment is therefore consistent with cases holding that punitive damage requests are not recognized as distinct claims and flow only from the underlying substantive claim. *See, e.g., Gilman*, 104 F.3d at 1430, citing *Zahn v. International Paper Co.*, 414 U.S. 291 (1973).

> > (aa) from whom significant ***relief*** is sought by members of the plaintiff class . . . .

Emphasis and bolding added.

Plaintiffs here assert their ***claims*** under the Kentucky Consumer Protection Act and seek ***relief*** thereunder including actual and punitive damages. The federal "claim" is what determines federal jurisdiction which, in turn, may lead to a federal judgment. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). The awarded "relief" may ***thereafter*** be awarded based on a Fed. R. Civ. P. 54(b) "judgment."[3]

With or without punitive damages, Plaintiff's proposed class action does not place $5,000,000 in controversy for the putative class so as to establish this Court's subject-matter jurisdiction. Accordingly, this Court lacks subject matter jurisdiction over this action.

## CONCLUSION

For the reasons state above, Plaintiffs' Motion to Remand should be granted by this Honorable Court, and this case should be remanded under 28 U.S.C. §1447(c) to the Jefferson Circuit Court where this case was originally filed.

Submitted by:

/s/ James Hays Lawson
James Hays Lawson
*Lawson at Law, PLLC*
P.O. Box 1286
Shelbyville, KY 40066

---

[3] Moreover, under federal law, different statutory language is accorded different meanings in different sections of the same act. *See Smith v. United States*, 508 U.S. 223, 235 (1993) (related statutory provisions should be given different meanings based on different statutory language); *DIRECTV, Inc. v. Brown*, 371 F.3d 814 (11th Cir. 2004) (when Congress uses different language in similar law provisions, it intends different meanings). Thus it is clear Congress intended different meanings for "claims" and "relief" in CAFA.

Tel: (502) 473-6525
Fax: (502) 473-6561
james@kyconsumerlaw.com
*Co-Counsel for Plaintiff*
*Philip Wayne Harrison*

James R. McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:	(502) 371-2179
Fax:	(502) 257-7309
jmckenzie@jmckenzielaw.com
*Co-Counsel for Plaintiff*
*Philip Wayne Harrison*

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document via the Court's CM/ECF system this 22nd day of September, 2022 on all counsel of record.

/s/ James Hays Lawson
James Hays Lawson
*Co-counsel for Plaintiff*
*Philip Wayne Harrison*